IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| DAINEIRA MANGUM, individually and on behalf of all others similarly situated,<br><br>     Plaintiff,<br><br>    v.<br><br>AMC NETWORKS, INC.,<br><br>     Defendant. | Case No. 1:22-cv-04857<br><br>Hon. Andrea R. Wood |

**AMC NETWORKS INC.'S MEMORANDUM OF LAW IN SUPPORT OF
MOTION TO DISMISS CLASS ACTION COMPLAINT AND STAY DISCOVERY**

Defendant, AMC Networks Inc. ("AMC"), respectfully moves this Court to dismiss Plaintiff Daineira Mangum's ("Plaintiff") complaint for lack of subject matter jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(1), and to stay discovery pending the outcome of AMC's motion to dismiss.

**I. INTRODUCTION**

Plaintiff's alleged injury—that AMC shared her video viewing history from shudder.com with Facebook through the use of the Facebook pixel on the Shudder website—could never have occurred and thus her claim cannot withstand a factual challenge to standing brought under Rule 12(b)(1). As will be shown by the sworn declaration of Shudder's Director of Product Services, Plaintiff, a Shudder subscriber for less than three months, was never aggrieved by AMC under the Video Privacy Protection Act, 18 U.S.C. § 2710 *et seq* ("VPPA"), and cannot be a part of any class, because she never viewed a single video on the Shudder website. Instead, she accessed Shudder video content exclusively through her Roku streaming device, a platform that AMC does

not control.  Thus, even if the Shudder website did use the Facebook pixel, the pixel never could have transmitted Plaintiff's viewing data.

As a result, AMC could not have disclosed her viewing information through the Shudder website and Plaintiff never suffered an injury in-fact.  Plaintiff has therefore failed to satisfy her burden of demonstrating she has Article III standing to bring her claim, a threshold jurisdictional issue that this Court must resolve before reaching the merits of her claim.  *Sullivan v. Liberty Mut. Ins. Co.*, 21 C 6084, 2022 WL 2105904, at *3 (N.D. Ill. June 10, 2022).  Styling the suit as a "class action" does not relieve Plaintiff of her burden of establishing that subject-matter jurisdiction exists.  Because the defects of Plaintiff's claim are incurable, the Court should dismiss the Complaint without leave to amend.  *See Flynn v. FCA US LLC*, 39 F.4th 946, 952 (7th Cir. 2022) (affirming dismissal without leave to amend following defendant's factual challenge to standing, where plaintiffs presented no competent evidence that they suffered an overpayment injury.)

## II.     BACKGROUND

### A.     Plaintiff's Allegations

Shudder is a horror film streaming service owned by Defendant AMC.  Compl. ¶ 13.b. Plaintiff alleges that users register for Shudder by signing up for an online newsletter.  *Id.* ¶ 20. She claims that Shudder users provide their personal information, including but not limited to their name, email address, and zip code.  *Id*.  Plaintiff also claims that she has been a "digital subscriber" of Shudder from 2021 to the present, and that when she first subscribed she provided her name, address, email address, IP address, and any cookies associated with her device. *Id*. ¶ 46.  She states that from 2021 to the present, she viewed video content via the Shudder website. *Id*. ¶ 47.

Plaintiff alleges that AMC violated the VPPA by disclosing her Shudder video viewing history to Facebook using the Facebook pixel without consent.  Compl. ¶¶ 24, 48.  Plaintiff claims

that the Facebook pixel is a code installed on Shudder's website that tracks when a subscriber enters the site and views video content. *Id.* ¶ 4. The complaint further alleges that a Facebook ID ("FID") is a unique and persistent identifier that Facebook assigns to each user. *Id*. ¶ 33. Plaintiff claims that with an FID, "anyone [*sic*] ordinary person can look up the user's Facebook profile and name." *Id*. She states that she has had a Facebook account since approximately 2010. *Id*. ¶ 47. Plaintiff alleges that when a Facebook user with a FID cookie on their browser views video from Shudder on the website or app, the Facebook pixel on Shudder's website causes the digital subscribers' identity and content name of the video the subscriber watched to be transmitted to Facebook by the user's browser. *Id*. ¶¶ 33, 40.

Plaintiff's description of how the internet, websites and Facebook code and identifiers work is dutifully summarized above. It is all very interesting, but utterly irrelevant and useless in trying to state a claim against AMC. As will become apparent from the remainder of this brief and the accompanying declarations, none of these generalized facts about technology can replace the irreducible constitutional minimum that this Plaintiff needs to show that she was injured in some way traceable to the conduct of this Defendant. Not only does this Complaint wholly fail to meet that burden, but it cannot be rewritten to fix this failure because this Plaintiff's personal viewing information did not and could not possibly have been shared via the Facebook pixel on the Shudder website.

      B.    **<u>Plaintiff's History with Shudder</u>**

AMC's business records confirm that Plaintiff's allegations about her subscriber history are demonstrably false. Using Plaintiff's email address, AMC conducted a diligent search of Plaintiff's limited relationship with Shudder. *See* Declaration of William Farley ("Farley Decl."), ¶ 4, Ex. 1 to Farley Decl.; Declaration of Marc Morel ("Morel Decl."), ¶ 12. The inquiry was

#180637233_v1

conducted by AMC's Director of Product Services, who has served in that position since January 2019. Morel Decl. ¶ 1. On February 26, 2022, Plaintiff began a Shudder subscription through a Roku streaming device. *Id*. ¶ 13. She cancelled her subscription on May 5, 2022. *Id*. ¶ 14.

Consumers can subscribe to Shudder directly through the Shudder website, through third-party streaming services such as Apple TV or Amazon Prime Video, or through third-party streaming devices such as Roku or Amazon Fire TV. *Id*. ¶ 4. When using a third-party streaming device such as Roku, users may view Shudder content by purchasing a Shudder subscription through a "channel" which is already integrated into the device platform, or they can download the Shudder app onto the device platform, pay to add a Shudder-specific subscription, and view Shudder content directly through the third-party streaming device ("In-app Subscriber"). *Id*. ¶¶ 6-8. AMC has never placed the Facebook pixel onto Roku streaming device platforms. *Id*. ¶ 11.

Plaintiff was an In-app Subscriber to Shudder through a Roku streaming device. Morel Decl. ¶ 13. During her three month subscription, she exclusively viewed Shudder content through Roku. *Id*. ¶ 15. Although the login credentials she used for her subscription on Roku would have given her *the ability* to view Shudder content directly on the Shudder website, she never did so. *Id*. ¶¶ 9, 16. AMC has no record of Plaintiff ever logging into the Shudder website or viewing content on the Shudder website. *Id*. ¶ 16.

In further contradiction to the allegations of the Complaint, Plaintiff began her subscription in 2022, not 2021, she is not currently a subscriber to Shudder (she cancelled her subscription in May 2022), and she did not sign up for a newsletter. *Id*. ¶¶ 13, 14, 17. Moreover, Plaintiff could not have provided the personal information she alleges she provided (such as her home address), because Shudder never collects that information, even from subscribers that sign up directly with the website. *Id*. ¶ 10.

### C. The VPPA

The VPPA prohibits a "video tape service provider"—defined as a person "engaged in the business . . . of rental, sale, or delivery of prerecorded video cassette tapes or similar audio visual materials" (18 U.S.C. § 2710(a)(4))—from "knowingly" disclosing a "consumer's" "personally identifiable information" ("PII"). 18 U.S.C. § 2710(b)(1). Plaintiff's subscriber history shows that there could not have been any violation of the VPPA by AMC because she never viewed video content on the Shudder website. Thus, there could not be any disclosure, much less "knowing" disclosure, of her "personally identifiable information."[1]

### III. LEGAL STANDARD

Plaintiff bears the burden of establishing that subject-matter jurisdiction exists. *See Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016) (citations omitted); *see also Silha v. ACT, Inc.*, 807 F.3d 169, 173-74 (7th Cir. 2015); *Apex Digital, Inc. v. Sears, Roebuck & Co.*, 572 F.3d 440, 443–44 (7th Cir. 2009). At the pleading stage, that burden requires plaintiffs to "clearly allege facts demonstrating each element" of standing—a doctrine rooted in the constitutional limitation of federal-court jurisdiction to actual cases or controversies. *Spokeo*, 578 U.S. at 338 (internal marks and citations omitted).

Article III standing is required to confer subject matter jurisdiction upon federal courts. *Apex Dig.*, 572 F.3d at 443. To establish Article III standing, the "irreducible constitutional minimum" (*see Freedom from Religion Found., Inc. v. Lew*, 773 F.3d 815, 819 (7th Cir. 2014)) requires that "a plaintiff must show: (1) it has suffered an 'injury in fact' that is (a) concrete and

---

[1] Plaintiff's claim also fails because she is unable to adequately allege the requisite elements of VPPA claim. AMC expressly does not waive these arguments which will be raised as defenses should Plaintiff's Complaint survive dismissal on standing. On the other hand, if this Court dismisses the Complaint for lack of subject matter jurisdiction, the additional arguments and defenses become moot.

particularized and (b) actual or imminent, not conjectural or hypothetical; (2) the injury is fairly traceable to the challenged action of the defendant; and (3) it is likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision" (*Silha*, 807 F.3d at 172–73) (citing *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 180–181 (2000)). As in any other case in federal court, "named plaintiffs who represent a class must allege and show that they personally have been injured" to confer standing. *Lewis v. Casey*, 518 U.S. 343, 357 (1996) (internal quotations omitted).

"'In essence the question of standing is whether the litigant is entitled to have the court decide the merits of the dispute or particular issues.'" *Perry v. Vill. of Arlington Heights*, 186 F.3d 826, 829 (7th Cir. 1999) (quoting *Warth v. Seldin*, 422 U.S. 490, 498 (1975)). Because standing is "not [a] mere pleading requirement[ ] but rather an indispensable part of the plaintiff's case, [it] must be supported in the same way as any other matter on which the plaintiff bears the burden of proof, *i.e.*, with the manner and degree of evidence required at the successive stages of the litigation." *Apex Dig.*, 572 F.3d at 443 (internal citation omitted).

In evaluating a challenge to subject matter jurisdiction, the court must first determine whether a factual or facial challenge has been raised. *Id.* 443. A factual challenge contends that "there is *in fact* no subject matter jurisdiction," even if the pleadings are formally sufficient. *Id.* at 444 (emphasis in original) (internal citations and quotation marks omitted).

On a motion to dismiss under Rule 12(b)(1) for lack of subject matter jurisdiction, the district court must accept as true all material allegations of the complaint, drawing all reasonable inferences therefrom in the plaintiff's favor, **unless** standing is challenged as a factual matter. *Notre Dame Affordable Hous., Inc. v. City of Chicago,* 1:18-CV-8116, 2020 WL 8366412, at *1

6

#180637233_v1

(N.D. Ill. Feb. 14, 2020), aff'd, 838 Fed. Appx. 188 (7th Cir. 2020) (citation omitted) (emphasis added).

Unlike a facial challenge, "[i]n reviewing a factual challenge, the court may look beyond the pleadings and view any evidence submitted to determine if subject matter jurisdiction exists." *Silha*, 572 F.3d at 173; *Roman v. United States Postal Service*, 821 F.2d 382, 385 (7th Cir. 1987) ("It is proper for the district court to look beyond the jurisdictional allegations in the complaint and to view whatever evidence has been submitted in determining whether subject matter jurisdiction exists"). Because federal jurisdiction must be jealously guarded and "jurisdiction cannot be conferred by consent of the parties, if the facts place the district court on notice that the jurisdictional allegation probably is false, the court is duty-bound to demand proof of its truth." *Kanzelberger v. Kanzelberger,* 782 F.2d 774, 777 (7th Cir. 1986).

## IV.   ARGUMENT

Under a factual challenge to the Complaint, Plaintiff lacks Article III standing. A factual attack, which subjects Plaintiff's claims to an even more stringent standard of review than a facial attack, requires dismissal *without leave to amend* because Plaintiff will *never* be able to establish an injury in fact caused by AMC. Relatedly, and for the same reasons, Plaintiff will never be able to assert a violation of the VPPA and thus could not serve as a representative for any putative class.

### A.   Plaintiff lacks any injury in fact.

Plaintiff's alleged injury is that AMC shared her Facebook ID along with her Shudder video viewing history with Facebook without her consent. But Plaintiff's subscriber history confirms that the alleged disclosure never could have happened. In order for her alleged injury to have occurred, at the very least Plaintiff would have had to view video content on Shudder's website. Despite what she alleges, Plaintiff never did so. Rather, she watched Shudder video

content exclusively as an In-App Subscriber through her Roku device. Morel Decl. ¶¶ 15-16. Since Plaintiff only watched Shudder on her Roku device, she never could have interacted with the Facebook pixel on Shudder's website even if it existed on the website, and thus Shudder could not have disclosed her viewing information. *See id.,* ¶¶ 11, 15-16. Plaintiff thus could not have suffered the injury she alleges and fails to satisfy the elements of standing. *See Notre Dame Affordable Hous., Inc.*, 2020 WL 8366412, at *3 (granting Rule 12(b)(1) motion to dismiss pursuant to plaintiffs' lack of legal interest in the property, where the court found that because Plaintiffs have failed to establish any interest in the property, they have failed to establish standing in this suit); *see also Ardash Marderosian Tr. v. Quinn*, 12 C 6869, 2013 WL 5405705, at *2 (N.D. Ill. Sept. 25, 2013) (granting Rule 12(b)(1) motion to dismiss based on plaintiff's lack of standing and finding that plaintiff failed to allege an injury in-fact when attempting to challenge Illinois statute that allowed undocumented students to receive lower in-state tuition where no undocumented immigrant had been awarded any scholarship funds, nor was there any imminent danger of this happening); *Perta v. Nat'l Credit Care Corp.*, 18-CV-5767, 2019 WL 4750098, at *5 (N.D. Ill. Sept. 30, 2019) (dismissing complaint with prejudice for lack of standing based on plaintiff's failure to allege a concrete injury where the complaint's factual allegations failed to demonstrate harm to plaintiff).

      **B.**     **Plaintiff suffered no viewing data disclosure and thus no violation of the VPPA occurred.**

As a consequence of having suffered no injury in fact, Plaintiff has also failed to allege any violation of the VPPA itself, which requires disclosure of viewing history data. As shown above, Plaintiff did not view any videos on Shudder's website, and thus could not have interacted with the pixel even if it was on the website, and her viewing information could not have been disclosed to Facebook. Plaintiff's inability to plausibly allege a VPPA violation forecloses her claim and

8

prevents her from representing a putative class. *See Kim v. McDonald's USA, LLC*, No. 21-CV-05287, 2022 WL 4482826, at *3 (N.D. Ill. Sept. 27, 2022) ("In a class action, the named plaintiffs representing a class must allege…that they personally have been injured, not that injury has been suffered by other, unidentified members of the class…and if none of the named plaintiffs purporting to represent a class establishes the requisite of a case or controversy with the defendants, none may seek relief on behalf of himself or any other member of the class.") (internal quotations and citations omitted).[2] Because Plaintiff lacks standing to bring a claim under the VPPA against AMC, and she is unable to cure the defects of her Complaint, the Complaint should be dismissed without leave to amend.

## V. THE COURT SHOULD STAY ALL DISCOVERY PENDING RESOLUTION OF AMC'S MOTION TO DISMISS

All discovery in this matter should be stayed pending the Court's resolution of AMC's motion to dismiss because Plaintiff's lack of standing is a dispositive threshold issue that deprives the Court of subject matter jurisdiction in the first instance. District courts have wide discretion in controlling discovery, including to stay discovery. *Crawford-El v. Britton*, 523 U.S. 574, 598-601 (1998); Fed. R. Civ. P. 26. Courts routinely stay discovery where, as here, a motion to dismiss relates to a threshold legal issue. *See, e.g.*, *In re Clearview AI, Inc. Consumer Priv. Litig., No*. 21

---

[2] Further, even if Plaintiff is somehow able to show proof of a concrete injury, neither her claim nor the claim of any other putative class member would belong in court. Shudder's Terms of Use (https://www.shudder.com/terms), which are incorporated by reference due to Plaintiff's specific reference and reliance on the website and terms in the complaint, contain a binding arbitration provision with a class action waiver that has been in place for several years. Thus, any claim by a subscriber with an actual injury would have to be resolved in mandatory arbitration. Moreover, the countless variations of subscriber types and subscriber histories (*i.e.* whether a person subscribed through the website, third-party streaming service, or third-party device; whether they actually watched content on Shudder's website, etc.), as evidenced by the named plaintiff's own unique situation, will make any putative class unsustainable.

#180637233_v1

C 135, 2021 WL 5862495, at *1 (N.D. Ill. Aug. 31, 2021) (collecting cases). While the filing of such a motion does not mean that a court will automatically stay discovery, stays are regularly granted in circumstances similar to this case. *See Rodriguez v. Ford Motor Co.*, 21 C 2553, 2022 WL 704780, at *2 (N.D. Ill. Mar. 9, 2022) (granting motion to stay discovery pending resolution of motion to dismiss and noting that "[g]iven the burden, time, and expense often associated with responding to discovery in a putative class action, courts regularly stay discovery pending a ruling on a motion to dismiss.").

A stay of discovery is especially appropriate in this case. AMC's motion shows that Plaintiff has not come close to meeting her burden of setting forth the minimum constitutional pleading requirements to establish this Court's jurisdiction. Because this is a factual challenge to standing, Plaintiff is not entitled to have inferences drawn in her favor. It is now incumbent on her to produce some information to prove that she has suffered a concrete and particularized injury traceable to AMC, making this a particularly inappropriate time for the parties to engage in burdensome discovery. Further, whether arbitration of a VPPA claim is mandatory for Plaintiff or any particular class member is another issue that the Court should resolve before any merits or class discovery is allowed to proceed, which is precisely the type of expense that the parties contracted to avoid in their dispute resolution agreement. Because AMC's motion could resolve the case in its entirety in light of the threshold issue of whether this Court has subject matter jurisdiction over this case, a stay of discovery is warranted. *See id.* ("Stays of discovery are not disfavored and are often appropriate where the motion to dismiss can resolve the case—at least as to the moving party.")

## VI. CONCLUSION

For the foregoing reasons, Defendant AMC Networks Inc. respectfully requests that this Court dismiss Plaintiff's claims without leave to amend, and stay all discovery pending resolution of the Motion to Dismiss.

Dated: November 18, 2022

Respectfully submitted,

**AMC NETWORKS INC.**

By: /s/ *William F. Farley*
One of Its Attorneys

William F. Farley
Rachel Agius
Holland & Knight LLP
150 North Riverside Plaza, Suite 2700
Chicago, Illinois 60606
312-263-3600
William.Farley@hklaw.com
Rachel.Agius@hklaw.com

Mark S. Melodia (*pro hac vice forthcoming*)
Holland & Knight LLP
31 West 52nd Street, 12th floor
New York, NY 10019
Mark.melodia@hklaw.com

*Counsel for Defendant*